**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

AMERISURE INSURANCE COMPANY and )
AMERISURE MUTUAL INSURANCE )
COMPANY, Michigan corporations, )
　 )
　　　　Plaintiffs, )　　**Case No.**
　　v. )
　 )
HORUS CONSTRUCTION SERVICES, INC., )
JOSE JUAN LAZARIN CARRILLO, and )
MARIA ANGELINA VERA RAMIREZ, )
　 )
　　　　Defendants. )

**COMPLAINT FOR DECLARATORY RELIEF**
**AND JURY DEMAND**

COMES NOW the plaintiffs, AMERISURE INSURANCE COMPANY

("AMERISURE") and Amerisure Mutual Insurance Company ("AMERISURE MUTUAL"), and

petition this Honorable Court for a Declaratory Judgment, and state as follows:

**THE PARTIES, JURISDICTION, AND VENUE**

1.　　Plaintiff AMERISURE issued insurance Policy No. GL 21165990101 to

defendant HORUS CONSTRUCTION SERVICES, INC. (the "GL Policy"). AMERISURE

MUTUAL issued umbrella insurance Policy No. CU 21165970102 to defendant HORUS

CONSTRUCTION SERVICES, INC. (the "Umbrella Policy").

2.　　AMERISURE and AMERISURE MUTUAL are corporations organized under the

laws of the State of Michigan with their principal place of business in Michigan.  Thus,

AMERISURE and AMERISURE MUTUAL are citizens of Michigan.

1

3. Pursuant to 28 U.S.C. § 1332(c)(1), Defendant HORUS CONSTRUCTION SERVICES, INC. ("HORUS") is a corporation organized under the laws of the State of Florida with its principal place of business in Florida. Thus, HORUS is a citizen of Florida.

4. Defendants JOSE JUAN LAZARIN CARRILLO and MARIA ANGELINA VERA RAMIREZ are citizens of Florida.

5. The amount in controversy exceeds the sum of $75,000,00, exclusive of interest and costs, relating to CARRILLO's personal injuries, including paraplegia, at issue in the Underlying Action. Therefore, this Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

6. Venue is proper in Unites States District Court for the Middle District of Florida, Tampa Division pursuant to 28 U.S.C. § 1391 because the events giving rise to this litigation occurred in Hillsborough County and at least one Defendant resides in Hillsborough County, Florida.

## **FACTS**

7. This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202.

8. AMERISURE and AMERISURE MUTUAL's claims herein relate to the insurance coverage for defense and indemnification that AMERISURE and AMERISURE MUTUAL allegedly owe to HORUS relating to a personal injury incident that occurred on June 17, 2022 (the "Incident"), and HORUS's demand that AMERISURE and AMERISURE MUTUAL defend and indemnify HORUS for damages relating to the incident pursuant to the AMERISURE GL Policy and the AMERISURE MUTUAL Umbrella Policy.

2

## FACTS RELATING TO THE UNDERLYING CLAIM AND INCIDENT

9.      On March 22, 2023, JOSE JUAN LAZARIN CARRILLO ("CARRILLO") and MARIA ANGELINA VERA RAMIREZ ("RAMIREZ") filed a lawsuit in the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, Florida, bearing the caption *Jose Juan Lazarin Carrillo and Maria Angelina Vera Ramirez, husband and wife, v. Horus Construction Services, Inc., et. al.,* Case No. 2023-CA-001902 (the "Underlying Action").

10.      CARRILLO and RAMIREZ, the plaintiffs in the Underlying Action, subsequently amended their Complaint on one occasion, the most recent being its Amended Complaint (the "Complaint").

11.      In the operative Complaint, CARRILLO and RAMIREZ allege that on or about June 17, 2022, CARRILLO was a welder and was working on the roof of a new building located in Hillsborough County, Florida.  **Exhibit A, at ¶11.**

12.      CARRILLO and RAMIREZ allege that HORUS was in charge of safety and the operation of the construction of the building.  **Exhibit A, at ¶12.**

13.      CARRILLO and RAMIREZ allege that, at the above time and place, CARRILLO fell several feet from an unguarded platform and was seriously injured.  **Exhibit A, at ¶19.** Upon information and belief, CARRILLO's injuries include paraplegia resulting from a spinal cord injury.

14.      CARRILLO and RAMIREZ allege that HORUS was negligent in that it "did not initiate and maintain programs which provided for frequent and regular inspections of the job site, materials and equipment to be made by a competent person"; "exposed their employees, agents and servants to fall hazards in that the job site inspections were not done to identify and correct said hazards"; "failed to carry out reasonable safe [sic] methods of operation on the

3

worksite"; "failed to prevent foreseeable risks of harm"; and "failed to implement safety policies and procedures for safety of workers on the worksite including but not limited to failure to provide harnesses, guarding of raised platforms and other acts and omissions to be determined through discovery". **Exhibit A, at ¶21.**

15. CARRILLO and RAMIREZ alleged that, as a result of HORUS's alleged negligence, CARRILLO suffered permanent bodily injuries, and RAMIREZ has suffered loss of consortium as a result of such injuries. **Exhibit A, at ¶¶22, 42.**

16. On April 18, 2023, CARRILLO and RAMIREZ served HORUS with a Summons and the original Complaint in the Underlying Action.

17. Upon information and belief, HORUS personnel who received the Summons and original Complaint misplaced those documents.

18. HORUS took no action with respect to the Summons and original Complaint in terms of filing an Appearance or responsive pleading in the Underlying Action.

19. On August 23, 2023, counsel for CARRILLO and RAMIREZ filed a Motion for Clerk's Default against HORUS based on HORUS's failure to appear or file a responsive pleading in the Underlying Action. ***See* Exhibit B.**

20. On August 24, 2023, Deputy Clerk Kory Bailey, of the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, Florida, entered a Clerk's Default against HORUS. ***See* Exhibit C.**

21. On November 5, 2024, in-house counsel for HORUS filed a Verified Motion to Vacate Default. ***See* Exhibit D.**

4

22.     On February 7, 2025, HORUS provided its first notice to AMERISURE and AMERISURE MUTUAL of the CARRILLO claim, providing only the claimant's name and a brief description of the accident.

23.     AMERISURE and AMERISURE MUTUAL immediately began investigation of the claim.

24.     On February 24, 2025, AMERISURE and AMERISURE MUTUAL were first provided a copy of the Amended Complaint in the Underlying Action.

25.     On February 24, 2025, AMERISURE contacted defense counsel for potential representation of HORUS in the Underlying Action.

26.     On February 26, 2025, AMERISURE informed HORUS'S personal counsel that the defense attorney had cleared conflicts and could accept the assignment.

27.     On February 26, 2025, HORUS'S personal counsel communicated to AMERISURE agreement with the assignment of defense counsel for HORUS.

28.     On March 3, 2025, AMERISURE and AMERISURE MUTUAL were first notified by HORUS's defense counsel that a Clerk's Default had been entered against HORUS.

29.     Prior to February 24, 2025, HORUS did not advise AMERISURE and AMERISURE MUTUAL that a lawsuit had been filed against HORUS and, prior to March 3, 2025, HORUS did not advise AMERISURE and AMERISURE MUTUAL that a Clerk's Default had been entered against HORUS.

30.     On March 8, 2025, the Honorable Circuit Judge Donna Goemer entered an Order denying without prejudice HORUS's Verified Motion to Vacate Default.  *See* **Exhibit E.**

5

31.     On March 17, 2025, AMERISURE sent HORUS correspondence advising that AMERISURE would defend HORUS in the Underlying Action subject to a reservation of rights, including with respect to AMERISURE MUTUAL's Umbrella Policy.  See **Exhibit F.**

32.     On March 26, 2025, HORUS's defense counsel filed an Amended Motion to Vacate Default and Supporting Memorandum of Law.  ***See* Exhibit G.**

33.     On June 25, 2025, *nunc pro tunc* to June 5, 2025, the Honorable Circuit Judge Donna Goemer entered an Order denying HORUS's Amended Motion to Vacate Default.  ***See* Exhibit H.**

**FACTS RELATED TO THE AMERISURE GL POLICY
AND AMERISURE MUTUAL UMBRELLA POLICY**

34.     AMERISURE issued to HORUS its Policy No. GL 21165990101, effective 2/1/22 to 2/1/23, which provides certain Commercial General Liability subject to its terms and conditions.  ***See* Exhibit I, the AMERISURE GL Policy.**

35.     Coverage under the AMERISURE GL Policy is set forth in Coverage Form CG 00 01 0413 and as amended by the FLORIDA CONTRACTORS GENERAL LIABILITY EXTENSION ENDORSEMENT, which provides, in pertinent part:

**SECTION I – COVERAGES**

**COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or suit that may result. But:

6

**(1)**     The amount we will pay for damages is limited as described in Section III- Limits of Insurance; and

**(2)**     Our right and duty to defend ents when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under coverage C.

No other obligation to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments- Coverages A and B.

\*      \*      \*

**d.**     "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**     Receives a written or verbal demand or claim for damages because of "bodily injury" or "property damage"; or

**(3)**     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.**     Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**Exhibit I, at SECTION I.**

36.     The AMERISURE GL Policy also contains strict requirements regarding the duties of its insured, in this case HORUS, in the event of an "occurrence", offense, claim, or "suit":

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*      \*      \*

**2.     Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a.     You must see to it that we are notified as soon as practicable of an "occurrence"   or an offense, regardless of the amount, which may result in

7

a claim. Knowledge    of an "occurrence" or an offense by your "employee(s)" shall not, in itself, constitute knowledge to you unless one of your partners, members, "executive officers", directors, or managers has knowledge of the "occurrence" or offense. To the extent possible, notice should include:

(1)     How, when and where the "occurrence" or offense took place;

(2)     The names and addresses of any injured persons and witnesses; and

(3)     The nature and location of any injury or damage arising out of the "occurrence" or offense.[1]

b.     If a claim is made or "suit" is brought against any insured, you must:

(1)     Immediately record the specifics of the claim or "suit" and the date received; and

(2)     Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.     You and any other involved insured must:

(1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"

(2)     Authorize us to obtain records and other information;

(3)     Cooperate with us in the investigation or settlement of the claim or defense against the "suit" and

(4)     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

*     *     *

**Exhibit I, at SECTION IV.**

---

[1] Paragraph 2.a.(1)-(3) is provided by form CG 72 89 04 17.

37.     The AMERISURE GL Policy also contains the following Construction

Management Errors and Omissions Exclusion endorsement, form CG 22 34 04 13:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION – CONSTRUCTION MANAGEMENT
ERRORS AND OMISSIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1.    The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2.    Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **1.** or **2.**

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

38.     The AMERISURE GL Policy also sets forth definitions for certain words and

phrases in the Policy that are enclosed in quotation marks, including:

**SECTION V.   DEFINITIONS**

9

\*       \*       \*

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*       \*       \*

5.      "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6.      "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

\*       \*       \*

10.     "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

\*       \*       \*

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*       \*       \*

18.     "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which   this insurance applies are alleged. "Suit" includes:

     a.      An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

     b.      Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**EXHIBIT I, at SECTION V.**

39.     AMERISURE MUTUAL issued to HORUS its Policy No. CU 21165970102, effective 2/1/22 to 2/1/23, which provides certain Umbrella Liability subject to its terms and conditions.  *See* **Exhibit J, the AMERISURE MUTUAL Umbrella Policy.**

10

40.     Coverage under the Umbrella Policy is set forth in Coverage Form CU 00 01 04

13, which provides, in pertinent part:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

**a.**     We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend.

But:

**(1)**     The amount we will pay for the "ultimate net loss" is limited as described in Section **III** – Limits Of Insurance; and

**(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

No other obligation to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments- Coverages **A** and **B**.

*       *       *

**d.**     "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of

11

that "bodily injury" or "property damage" after the end of the policy period.

\*        \*        \*

f.      Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death at any time from the "bodily injury".

**Exhibit J, at SECTION I.**

41.     The AMERISURE MUTUAL Umbrella Policy also contains strict requirements regarding the duties of its insured, in this case HORUS, in the event of an "occurrence", offense, claim, or "suit":

**SECTION IV - CONDITIONS**

\*        \*        \*

3.      **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a.      You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim. To the extent possible, notice should include:

(1)      How, when and where the "occurrence" or offense took place;

(2)      The names and addresses of any injured persons and witnesses; and

(3)      The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.      If a claim is made or "suit" is brought against any insured, you must:

(1)      Immediately record the specifics of the claim or "suit" and the date received; and

(2)      Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.      You and any other involved insured must:

(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)    Authorize us to obtain records and other information;

(3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit" and

(4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

\*    \*    \*

**Exhibit J, at SECTION IV.**

42.    The AMERISURE MUTUAL Umbrella Policy also contains certain exclusions, including the following:

**2. Exclusions**

This insurance does not apply to:

\*    \*    \*

**s.**    **Professional Services**

"Bodily injury" or "property damage" due to rendering of or failure to render any professional service. This includes but is not limited to:

\*    \*    \*

(3)    Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager;

\*    \*    \*

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or

13

"property damage", involved the rendering of or failure to render any professional service.

**Exhibit J, at Section I, 2.**

43.    The AMERISURE MUTUAL Umbrella Policy also sets forth definitions for

certain words and phrases in the Policy that are enclosed in quotation marks, including:

**SECTION V. – DEFINITIONS**

\*        \*        \*

3.    "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

\*        \*        \*

6.    "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7.    "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

\*        \*        \*

10.    "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

\*        \*        \*

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*        \*        \*

21.    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

14

> **a.**  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;
>
> or
>
> **b.**  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

**EXHIBIT J, at SECTION V.**

44.  AMERISURE retained agreed-upon defense counsel to represent HORUS in the Underlying Action and, at all times relevant hereto, AMERISURE has continued to provide a defense to HORUS, subject to AMERISURE's reservation of rights.

45.  Thus, an actual controversy within this Court's jurisdiction exists.

46.  All conditions precedent to this action have been met by AMERISURE and AMERISURE MUTUAL and/or waived by HORUS.

### COUNT I – DECLARATORY RELIEF PURSUANT TO THE CONDITIONS OF THE AMERISURE GL POLICY

47.  AMERISURE realleges and incorporates the allegations set forth in Paragraphs 1 – 46 above as if fully set forth herein.

48.  This Court has jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

49.  AMERISURE, AMERISURE MUTUAL, HORUS, CARRILLO, and RAMIREZ have claims and/or interests that would be affected by the requested declarations.

50.  AMERISURE demands a jury trial, specifically as to this Count.

51.  AMERISURE issued the AMERISURE GL Policy to Horus. *See* **Exhibit I.**

52.  CARRILLO's accident of June 17, 2022, as alleged in the Amended Complaint in the Underlying Action, constituted an "occurrence" under the AMERISURE GL Policy.

15

53. CARRILLO's alleged injuries sustained in the accident at issue in the Underlying Action constitute "bodily injury," and RAMIREZ's alleged loss of consortium constitutes damages because of "bodily injury," that would be covered by the AMERISURE GL Policy if not otherwise excluded.

54. HORUS failed to notify AMERISURE of the CARRILLO accident of June 17, 2022, until February 7, 2025, thereby failing to provide AMERISURE notice of the "occurrence" as soon as practicable.

55. HORUS was served with the Complaint and Summons in the Underlying Action on April 18, 2023, but failed to immediately record the specifics of the claim or "suit" and the date received, notify AMERISURE as soon as practicable, failed to immediately send AMERISURE copies of the Complaint and Summons, and failed to cooperate with AMERISURE in the investigation or settlement of the claim or defense against the "suit", and thereby HORUS breached the Duties In The Event Of Occurrence, Offense, Claim Or Suit provision set forth in SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS of the AMERISURE GL Policy.

56. HORUS possessed valid defenses in the Underlying Action, which HORUS will be unable to assert due to the Court's entry of the Clerk's Default against HORUS in the Underlying Action.

57. HORUS failed to comply with the Commercial General Liability Conditions set forth in the AMERISURE GL Policy with regard to the Duties In The Event Of Occurrence, Offense, Claim Or Suit, in that:

    a.) HORUS failed to notify AMERISURE of the June 17, 2022, accident in which CARRILLO suffered severe "bodily injury" until February 7, 2025, thereby failing to comply with the requirement that HORUS notify

AMERISURE as soon as practicable of an occurrence which may have resulted in a claim;

b.) HORUS was served with the Complaint and Summons in the Underlying Action on April 18, 2023, but failed to immediately record the specifics of the "suit" and the date received;

c.) HORUS was served with the Complaint and Summons in the Underlying Action on April 18, 2023, but did not notify AMERISURE of the CARRILLO accident until February 7, 2025, and failed to ever notify AMERISURE of the existence of the "suit" filed against HORUS, thereby failing to notify AMERISURE as soon as practicable;

d.) HORUS was served with the Complaint and Summons in the Underlying Action on April 18, 2023, but failed to immediately send AMERISURE copies of any demands, notices, summonses, or legal papers received in connection with the "suit";

e.) A Clerk's Default was entered against HORUS in the Underlying Action on October 24, 2023, but HORUS failed to notify AMERISURE of the Clerk's Default or provide a copy of said Order.

58. HORUS is now seeking a continued defense and indemnification from AMERISURE for any damages that may be assessed against HORUS in the Underlying Action, pursuant to the terms of the AMERISURE GL Policy.

59. By failing to comply with the terms of the Commercial General Liability Conditions set forth in the AMERISURE GL Policy, HORUS has deprived AMERISURE of the ability, through HORUS's assigned defense counsel, to timely file an Appearance and responsive pleading on behalf of HORUS in the Underlying Action and thereby avoid the Court's entry of a Clerk's Default against HORUS.

60. HORUS's failure to comply with the terms of the Commercial General Liability Conditions set forth in the AMERISURE GL Policy has prevented AMERISURE, through HORUS's assigned defense counsel, to assert a vigorous defense on behalf of HORUS in the Underlying Action.

17

61.    HORUS's failure to comply with the terms of the Commercial General Liability Conditions set forth in the AMERISURE GL Policy has irreparably prejudiced AMERISURE. .

62.    All conditions precedent to the filing of this lawsuit have been complied with by AMERISURE and AMERISURE MUTUAL.  Alternatively, to the extent that AMERISURE and/or AMERISURE MUTUAL have failed to comply with any conditions precedent, the failure to comply with the same does not prejudice HORUS and/or is such an immaterial breach that it fails to rise to the level of requisite materiality that would allow HORUS to deny AMERISURE and AMERISURE MUTUAL's claims.  Alternatively, HORUS waived any such conditions and/or is estopped from asserting any defenses related to the conditions precedent.

63.    As such, an actual controversy exists between AMERISURE and HORUS. AMERISURE is in doubt: (1) as to its rights, duties, and obligations owed to HORUS with regard to the Underlying Action under the terms and conditions of the AMERISURE GL Policy; and (2) whether HORUS breached the terms and conditions of the Commercial General Liability Conditions set forth in the AMERISURE GL Policy, particularly, but not limited to, the notice requirements.

WHEREFORE, Plaintiff AMERISURE and AMERISURE MUTUAL respectfully request that this Honorable Court enter an order of declaratory judgment finding that:

1.)    HORUS failed to comply with the Commercial General Liability Conditions set forth in the AMERISURE GL Policy by failing to notify AMERISURE as soon as practicable of an occurrence which may have resulted in a claim;

2.)    HORUS failed to comply with the Commercial General Liability Conditions set forth in the AMERISURE GL Policy by failing to immediately record the specifics of the "suit" in the Underlying Action and the date received;

3.)    HORUS failed to comply with the Commercial General Liability Conditions set forth in the AMERISURE GL Policy by failing to notify

18

AMERISURE of the existence of the "suit" filed against HORUS, thereby failing to notify AMERISURE as soon as practicable;

4.) HORUS failed to comply with the Commercial General Liability Conditions set forth in the AMERISURE GL Policy by failing to immediately send AMERISURE copies of the Summons and Complaint served upon HORUS in the Underlying Action;

5.) HORUS failed to comply with the Commercial General Liability Conditions set forth in the AMERISURE GL Policy by failing to immediately send AMERISURE copies of the Order of Clerk's Default entered against HORUS in the Underlying Action;

6.) HORUS's failure to take any action after HORUS was served with Summons and Complaint in the Underlying Action resulted in the Court in that action entering an Order of Clerk's Default and thereby depriving HORUS from asserting a defense in the Underlying Action;

7.) HORUS's failure to comply with the Commercial General Liability Conditions set forth in the AMERISURE GL Policy prejudiced AMERISURE by depriving AMERISURE of the ability to timely retain defense counsel on HORUS's behalf and thereby avoid the Court's entry of an Order of Clerk's Default in the Underlying Action;

8.) Because HORUS failed to comply with the Commercial General Liability Conditions set forth in the AMERISURE GL Policy and AMERISURE was prejudiced by HORUS's failure, AMERISURE is not required to defend HORUS in the Underlying Action;

9.) Because HORUS failed to comply with the Commercial General Liability Conditions set forth in the AMERISURE GL Policy and AMERISURE was prejudiced by HORUS's failure, AMERISURE is not required to indemnify HORUS for any damages that may be assessed against HORUS in the Underlying Action;

10.) AMERISURE is entitled to any and all other relief this Court deems appropriate.

**COUNT II – DECLARATORY RELIEF PURSUANT TO THE CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS EXCLUSION IN THE AMERISURE GL POLICY**

64. AMERISURE realleges and incorporates the allegations set forth in Paragraphs 1 – 46 above as if fully set forth herein.

19

65.    This Court has jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

66.    AMERISURE, AMERISURE MUTUAL, HORUS, CARRILLO, and RAMIREZ have claims and/or interests that would be affected by the requested declarations.

67.    AMERISURE demands a jury trial, specifically as to this Count.

68.    The Amended Complaint in the Underlying Action alleges that CARRILLO suffered severe bodily injuries during a worksite accident during the construction of a new building in Hillsborough County, Florida.  *See* **Exhibit A, at ¶¶ 10, 11.**

69.    Upon information and belief, HORUS was responsible for inspection, supervision, and/or quality control duties on the worksite at issue in the Underlying Action.

70.    In the Amended Complaint, CARRILLO and RAMIREZ allege that HORUS was in charge of safety and the operation of the construction of the building at the worksite at issue in the Underlying Action.  *See* **Exhibit A, at ¶12.**

71.    In the Amended Complaint, CARRILLO and RAMIREZ further allege that HORUS was negligent for, *inter alia,* failing to provide for "frequent and regular inspections of the job site, materials and equipment" of the construction site, failing to prevent fall hazards through job site inspections, failing to carry out safe measures of operation, and failing to implement necessary safety policies to prevent fall accident.  *See* **Exhibit A, at ¶21.** CARRILLO and RAMIREZ further allege that HORUS's negligence in these regards caused CARRILLO's fall and subsequent bodily injuries, and RAMIREZ's claim for loss of consortium based on CARRILLO's injuries.

72.    The AMERISURE GL Policy issued to HORUS contains an endorsement titled **EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS**, which

20

states, in pertinent part, that "[t]his insurance does not apply to 'bodily injury' … arising out of: … **2.** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project in which you serve as construction manager." *See* **Exhibit I.**

73. In the Underlying Action, CARRILLO's bodily injuries are alleged to have arisen out of HORUS's inspection, supervision, and quality control activities.

74. Upon information and belief, as well as based on the allegations of the Amended Complaint in the Underlying Action, HORUS served as construction manager for the construction project at issue in the Underlying Action.

75. Accordingly, pursuant to the **EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS** endorsement contained in the AMERISURE GL Policy, any insurance that would otherwise be provided to HORUS by the AMERISURE GL Policy does not apply to CARRILLO's "bodily injury" as alleged in the Underlying Action.

76. All conditions precedent to the filing of this lawsuit have been complied with by AMERISURE.  Alternatively, to the extent that AMERISURE has failed to comply with any conditions precedent, the failure to comply with the same does not prejudice HORUS and/or is such an immaterial breach that it fails to rise to the level of requisite materiality that would allow HORUS to deny AMERISURE's claims.  Alternatively, HORUS waived any such conditions and/or is estopped from asserting any defenses related to the conditions precedent.

77. As such, an actual controversy exists between AMERISURE and HORUS. AMERISURE is in doubt: (1) as to its rights, duties, and obligations owed to HORUS with regard to the Underlying Action under the terms and conditions of the AMERISURE GL Policy; and (2) whether the **EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND**

**OMISSIONS** endorsement excludes any applicable insurance coverage available to HORUS for the damages claimed in the Underlying Action.

WHEREFORE, Plaintiff AMERISURE respectfully requests that this Honorable Court enter an order of declaratory judgment finding that:

1.) HORUS served as construction manager for the project at issue in the Underlying Action;

2.) The "bodily injury" allegedly suffered by CARRILLO that is at issue in the Underlying Action arose from HORUS's inspection, supervision, and/or quality control activities at the project;

3.) Any and all damages awarded against HORUS in the Underlying Action arising from or related to the "bodily injury" suffered by CARRILLO and RAMIREZ's loss of consortium are excluded from coverage under the AMERISURE GL Policy pursuant to the **EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS** endorsement.  As such, AMERISURE has no duty to defend or indemnify HORUS in the Underlying Action.

4.) AMERISURE is entitled to any and all other relief this Court deems appropriate.

**COUNT III – DECLARATORY RELIEF PURSUANT TO THE
CONDITIONS OF THE AMERISURE MUTUAL UMBRELLA POLICY**

78.    AMERISURE MUTUAL realleges and incorporates the allegations set forth in Paragraphs 1 – 46 above as if fully set forth herein.

79.    This Court has jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

80.    AMERISURE, AMERISURE MUTUAL, HORUS, CARRILLO, and RAMIREZ have claims and/or interests that would be affected by the requested declarations.

81.    AMERISURE MUTUAL demands a jury trial, specifically as to this Count.

82.    AMERISURE MUTUAL issued the AMERISURE MUTUAL Umbrella Policy to Horus. *See* **Exhibit J.**

83.     CARRILLO's accident of June 17, 2022, as alleged in the Amended Complaint in the Underlying Action, constituted an "occurrence" under the AMERISURE MUTUAL Umbrella Policy.

84.     CARRILLO's alleged injuries sustained in the accident at issue in the Underlying Action constitute "bodily injury," and RAMIREZ's alleged loss of consortium constitutes damages because of "bodily injury," that would be covered by the AMERISURE MUTUAL Umbrella Policy if not otherwise excluded.

85.     HORUS failed to notify AMERISURE MUTUAL of the CARRILLO accident of June 17, 2022, until February 7, 2025, thereby failing to provide AMERISURE MUTUAL notice of the "occurrence" as soon as practicable.

86.     HORUS was served with the Complaint and Summons in the Underlying Action on April 18, 2023, but failed to immediately record the specifics of the claim or "suit" and the date received, notify AMERISURE MUTUAL as soon as practicable, failed to immediately send AMERISURE MUTUAL copies of the Complaint and Summons, and failed to cooperate with AMERISURE MUTUAL in the investigation or settlement of the claim or defense against the "suit", and thereby HORUS breached the Duties In The Event Of Occurrence, Offense, Claim Or Suit provision set forth in SECTION IV - CONDITIONS of the AMERISURE MUTUAL Umbrella Policy.

87.     HORUS possessed valid defenses in the Underlying Action, which HORUS will be unable to assert due to the Court's entry of the Clerk's Default against HORUS in the Underlying Action.

88.    HORUS failed to comply with the Conditions set forth in the AMERISURE

MUTUAL Umbrella Policy with regard to the Duties In The Event Of Occurrence, Offense,

Claim Or Suit, in that:

a.)    HORUS failed to notify AMERISURE MUTUAL of the June 17, 2022, accident in which CARRILLO suffered severe "bodily injury" until February 7, 2025, thereby failing to comply with the requirement that HORUS notify AMERISURE MUTUAL as soon as practicable of an occurrence which may have resulted in a claim;

b.)    HORUS was served with the Complaint and Summons in the Underlying Action on April 18, 2023, but failed to immediately record the specifics of the "suit" and the date received;

c.)    HORUS was served with the Complaint and Summons in the Underlying Action on April 18, 2023, but did not notify AMERISURE MUTUAL of the CARRILLO accident until February 7, 2025, and failed to ever notify AMERISURE MUTUAL of the existence of the "suit" filed against HORUS, thereby failing to notify AMERISURE MUTUAL as soon as practicable;

d.)    HORUS was served with the Complaint and Summons in the Underlying Action on April 18, 2023, but failed to immediately send AMERISURE MUTUAL copies of any demands, notices, summonses, or legal papers received in connection with the "suit";

e.)    A Clerk's Default was entered against HORUS in the Underlying Action on October 24, 2023, but HORUS failed to notify AMERISURE MUTUAL of the Clerk's Default or provide a copy of said Order.

89.    HORUS is now seeking a continued defense and indemnification from

AMERISURE MUTUAL for any damages that may be assessed against HORUS in the

Underlying Action, pursuant to the terms of the AMERISURE MUTUAL Umbrella Policy.

90.    By failing to comply with the terms of the Conditions set forth in the

AMERISURE MUTUAL Umbrella Policy, HORUS has deprived AMERISURE MUTUAL of

the ability, through HORUS's assigned defense counsel, to timely file an Appearance and

responsive pleading on behalf of HORUS in the Underlying Action and thereby avoid the

Court's entry of a Clerk's Default against HORUS.

24

91. HORUS's failure to comply with the terms of the Conditions set forth in the AMERISURE MUTUAL Umbrella Policy has prevented AMERISURE MUTUAL, through HORUS's assigned defense counsel, to assert a vigorous defense on behalf of HORUS in the Underlying Action.

92. HORUS's failure to comply with the terms of the Conditions set forth in the AMERISURE GL Policy has irreparably prejudiced AMERISURE MUTUAL.

93. All conditions precedent to the filing of this lawsuit have been complied with by AMERISURE and AMERISURE MUTUAL. Alternatively, to the extent that AMERISURE and/or AMERISURE MUTUAL have failed to comply with any conditions precedent, the failure to comply with the same does not prejudice HORUS and/or is such an immaterial breach that it fails to rise to the level of requisite materiality that would allow HORUS to deny AMERISURE and AMERISURE MUTUAL's claims. Alternatively, HORUS waived any such conditions and/or is estopped from asserting any defenses related to the conditions precedent.

94. As such, an actual controversy exists between AMERISURE MUTUAL and HORUS. AMERISURE MUTUAL is in doubt: (1) as to its rights, duties, and obligations owed to HORUS with regard to the Underlying Action under the terms and conditions of the AMERISURE MUTUAL Umbrella Policy; and (2) whether HORUS breached the terms and conditions of the Conditions set forth in the AMERISURE MUTUAL Umbrella Policy, particularly, but not limited to, the notice requirements.

WHEREFORE, Plaintiff AMERISURE and AMERISURE MUTUAL respectfully request that this Honorable Court enter an order of declaratory judgment finding that:

1.) HORUS failed to comply with the Conditions set forth in the AMERISURE MUTUAL Umbrella Policy by failing to notify AMERISURE MUTUAL as soon as practicable of an occurrence which may have resulted in a claim;

25

2.)    HORUS failed to comply with the Conditions set forth in the AMERISURE MUTUAL Umbrella Policy by failing to immediately record the specifics of the "suit" in the Underlying Action and the date received;

3.)    HORUS failed to comply with the Conditions set forth in the AMERISURE MUTUAL Umbrella Policy by failing to notify AMERISURE MUTUAL of the existence of the "suit" filed against HORUS, thereby failing to notify AMERISURE MUTUAL as soon as practicable;

4.)    HORUS failed to comply with the Conditions set forth in the AMERISURE MUTUAL Umbrella Policy by failing to immediately send AMERISURE MUTUAL copies of the Summons and Complaint served upon HORUS in the Underlying Action;

5.)    HORUS failed to comply with the Conditions set forth in the AMERISURE MUTUAL Umbrella Policy by failing to immediately send AMERISURE MUTUAL copies of the Order of Clerk's Default entered against HORUS in the Underlying Action;

6.)    HORUS's failure to take any action after HORUS was served with Summons and Complaint in the Underlying Action resulted in the Court in that action entering an Order of Clerk's Default and thereby depriving HORUS from asserting a defense in the Underlying Action;

7.)    HORUS's failure to comply with the Conditions set forth in the AMERISURE MUTUAL Umbrella Policy prejudiced AMERISURE MUTUAL by depriving AMERISURE and/or AMERISURE MUTUAL of the ability to timely retain defense counsel on HORUS's behalf and thereby avoid the Court's entry of an Order of Clerk's Default in the Underlying Action;

8.)    Because HORUS failed to comply with the Conditions set forth in the AMERISURE MUTUAL Umbrella Policy and AMERISURE MUTUAL was prejudiced by HORUS's failure, AMERISURE MUTUAL is not required to defend HORUS in the Underlying Action;

9.)    Because HORUS failed to comply with the Conditions set forth in the AMERISURE MUTUAL Umbrella Policy and AMERISURE MUTUAL was prejudiced by HORUS's failure, AMERISURE MUTUAL is not required to indemnify HORUS for any damages that may be assessed against HORUS in the Underlying Action;

10.)    That AMERISURE MUTUAL is entitled to any and all other relief this Court deems appropriate.

## COUNT IV – DECLARATORY RELIEF PURSUANT TO THE PROFESSIONAL SERVICES EXCLUSION IN THE AMERISURE MUTUAL UMBRELLA POLICY

95.    AMERISURE MUTUAL realleges and incorporates the allegations set forth in Paragraphs 1 – 46 above as if fully set forth herein.

96.    This Court has jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

97.    AMERISURE, AMERISURE MUTUAL, HORUS, CARRILLO, and RAMIREZ have claims and/or interests that would be affected by the requested declarations.

98.    AMERISURE MUTUAL demands a jury trial, specifically as to this Count.

99.    The Amended Complaint in the Underlying Action alleges that CARRILLO suffered severe bodily injuries during a worksite accident during the construction of a new building in Hillsborough County, Florida.  *See* **Exhibit A, at ¶¶ 10, 11.**

100.    Upon information and belief, HORUS was responsible for inspection, supervision, and/or quality control duties on the worksite at issue in the Underlying Action.

101.    In the Amended Complaint, CARRILLO and RAMIREZ allege that HORUS was in charge of safety and the operation of the construction of the building at the worksite at issue in the Underlying Action.  *See* **Exhibit A, at ¶12.**

102.    In the Amended Complaint, CARRILLO and RAMIREZ further allege that HORUS was negligent for, *inter alia,* failing to provide for "frequent and regular inspections of the job site, materials and equipment" of the construction site, failing to prevent fall hazards through job site inspections, failing to carry out safe measures of operation, and failing to implement necessary safety policies to prevent fall accident.  *See* **Exhibit A, at ¶21.** CARRILLO and RAMIREZ further allege that HORUS's negligence in these regards caused

27

CARRILLO's fall and subsequent bodily injuries, and RAMIREZ's claim for loss of consortium based on CARRILLO's injuries.

103. The AMERISURE MUTUAL Umbrella Policy issued to HORUS contains a **Professional Services** exclusion, which states, in pertinent part, that "[t]his insurance does not apply to: … **s. Professional Services** "Bodily injury" … due to the rendering of or failure to render any professional service. This includes but is not limited to: … **(3)** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project in which you serve as construction manager." *See* **Exhibit J, at 2. Exclusions.**

104. In the Underlying Action, CARRILLO's bodily injuries are alleged to have arisen out of HORUS's inspection, supervision, and quality control activities.

105. Upon information and belief, as well as based on the allegations of the Amended Complaint in the Underlying Action, HORUS served as construction manager for the construction project at issue in the Underlying Action.

106. Accordingly, pursuant to the **Professional Services** exclusion contained in the AMERISURE MUTUAL Umbrella Policy, any insurance that would otherwise be provided to HORUS by the AMERISURE MUTUAL Umbrella Policy does not apply to CARRILLO's "bodily injury" as alleged in the Underlying Action.

107. All conditions precedent to the filing of this lawsuit have been complied with by AMERISURE MUTUAL. Alternatively, to the extent that AMERISURE MUTUAL has failed to comply with any conditions precedent, the failure to comply with the same does not prejudice HORUS and/or is such an immaterial breach that it fails to rise to the level of requisite materiality that would allow HORUS to deny AMERISURE MUTUAL's claims. Alternatively,

28

HORUS waived any such conditions and/or is estopped from asserting any defenses related to the conditions precedent.

108.    As such, an actual controversy exists between AMERISURE MUTUAL and HORUS.  AMERISURE MUTUAL is in doubt: (1) as to its rights, duties, and obligations owed to HORUS with regard to the Underlying Action under the terms and conditions of the AMERISURE GL Policy; and (2) whether the **Professional Services** exclusion excludes any applicable insurance coverage available to HORUS for the damages claimed in the Underlying Action.

WHEREFORE, Plaintiff AMERISURE MUTUAL respectfully requests that this Honorable Court enter an order of declaratory judgment finding that:

1.)    HORUS served as construction manager for the project at issue in the Underlying Action;

2.)    The "bodily injury" allegedly suffered by CARRILLO that is at issue in the Underlying Action arose from HORUS's inspection, supervision, and/or quality control activities at the project;

3.)    Any and all damages awarded against HORUS in the Underlying Action arising from or related to the "bodily injury" suffered by CARRILLO and RAMIREZ's loss of consortium are excluded from coverage under the AMERISURE MUTUAL Umbrella Policy pursuant to the **Professional Services** exclusion.  As such, AMERISURE MUTUAL has no duty to defend or indemnify HORUS in the Underlying Action.

4.)    AMERISURE MUTUAL is entitled to any and all other relief this Court deems appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs AMERISURE and AMERISURE MUTUAL hereby demand a jury trial on all issues so triable.

Dated:  June 26, 2026

ANDERSON RASOR & PARTNERS, LLP

/s/ Gerald W. Huston
Gerald W. Huston (Fla. Bar. No. 104091)
150 S. Wacker Drive, Ste. 350
Chicago, IL 60606
Telephone: (312) 673-7797
Facsimile: (312) 673-7781
Gerald.Huston@ARandPartners.com


BUTLER WEIHMULLER KATZ CRAIG LLP
/s/ Matthew J. Lavisky
Matthew J. Lavisky (Fla. Bar No. 48109)
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
mlavisky@butler.legal

***Attorneys for Plaintiffs***
***Amerisure Insurance Company and***
***Amerisure Mutual Insurance Company***

30